**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| NIA SHENE' LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-0817 (ABJ) |
| | ) | |
| KELLY LOEFFLER, | ) | |
| *Administrator,* | ) | |
| *Small Business Administration*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Nia Lucas, proceeding *pro se*, brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, against defendant Kelly Loeffler, the Administrator of the Small Business Association ("SBA"), in her official capacity.  Compl. at 1–2.[1]  Plaintiff worked at the SBA from January 2017 to April 2020.  Compl. ¶ 9.  She alleges that defendant violated the FLSA by retaliating against her for "asserting her legally protected workplace rights," that is, for filing a previous lawsuit under the FLSA against the SBA: *Lucas v. Guzman*,  No. 21-0296, 2022 WL 2064852 (D.D.C. June 8, 2022) ("*Lucas I*").  Compl. ¶ 3, 87-95.  This case is one of a series of lawsuits that plaintiff has filed related to her brief employment at the SBA.  *See Lucas I*; *Lucas v. Guzman*, No. 22-2101, 2024 WL 4650944 (D.D.C. Nov. 1, 2024) ("*Lucas II*"); *Lucas v. Dhali*, No. 24-0685, 2025 WL 3771999 (D.D.C May 29, 2025); *Lucas v. Loeffler*, No. 23-3535 (D.D.C.)

---

1       The suit was originally brought against Isabel Guzman, the previous SBA Administrator, and Loeffler has been substituted as the defendant.

1

("*Lucas III*"); *Lucas v. AFGE*, No. 22-777; and *Lucas v. AFGE*, No. 22-1540.  In this case, plaintiff seeks declaratory and monetary relief.  Compl. at 15.

On August 19, 2024, defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. to Dismiss and Mem. in Supp. [Dkt. # 11] ("Def.'s Mot.").  Defendant submits that the alleged events do not constitute retaliation as a matter of law, and that plaintiff failed to plausibly allege either a materially adverse action or a causal connection between the protected activity and any materially adverse action.  *See id.*  Defendant also argues that the case should be dismissed because all of plaintiff's allegations "recapitulate allegations made in [p]laintiff's other lawsuits" and because the instant complaint "is an attempt to evade rulings in *Lucas I.*"  Def.'s Mot. at 1.  The motion is fully briefed.  *See* Pl.'s Opp. to Def.'s Mot. ("Pl.'s Opp.") [Dkt. # 13]; Def.'s Reply in Further Supp. of Def.'s Mot. [Dkt. # 15] ("Def.'s Reply"); Pl.'s Sur-reply in Opp. to Def.'s Mot. (Pl.'s Sur-Reply) [Dkt. #17].

For the reasons set forth below, defendant's motion to dismiss will be granted.

## BACKGROUND

Plaintiff was employed as a program analyst in the SBA's Office of Women's Business Ownership from 2017 to 2020.  Compl. ¶ 9; *Lucas I*, 2022 WL 2064852, at *2.  On January 22, 2018, she was furloughed as part of a federal government shutdown.  *See Lucas I*, 2022 WL 2064852, at *2.  During the shutdown, plaintiff worked from home for six hours.  *Id.*  After the government resumed operations, plaintiff was informed that she would be paid for only four of those hours, because the agency had determined that was the amount of time it considered reasonable for employees to perform "shut down activities."  *Id.* at *3.  Shortly thereafter, plaintiff filed a grievance through the union concerning this and other matters.  *See* Ex. 18 to Compl.

2

[Dkt. # 1-18] (Feb. 14, 2018 AFGE Grievance Form) and Ex. 19 to Compl. [Dkt. # 1-19] (SBA Resp. to Grievance #1-31-18 – Addendum 1 (Feb. 14, 2018)).

Plaintiff also alleges that, during her time at the SBA, she was subjected to a "campaign of harassment and retaliation" related to her requests for accommodation of disabilities, and that she was discriminated against on the basis of her gender and race. *Lucas II*, 2024 WL 4650944, at *1–2 (internal quotations omitted). In addition to the union grievance, plaintiff filed a series of EEO complaints regarding the alleged discrimination. *See id.*

Plaintiff alleges that on March 4, 2019, she experienced a workplace injury. Compl. ¶ 38. She asserts that on that date, she was assaulted and prevented from entering her workplace when she attempted to return to work after pregnancy-related leave. *Lucas II*, 2024 WL 4650944, at *2. Plaintiff claims the incident aggravated her pre-existing Post Traumatic Stress Disorder ("PTSD"), a condition that had been diagnosed in April 2018. *Id.* She subsequently filed a claim for worker's compensation benefits. *Id.*

On May 8, 2018, the SBA sent plaintiff a Notice of Proposed Removal stating that it intended to end her employment. Compl. ¶ 68; *see also* Ex. 13. to Compl. [Dkt. # 1-13]; *Lucas III*, 2025 WL 3771999, at *2. Among the reasons provided in the letter, the SBA stated that her claims regarding the six hours she worked during the furlough "lacked candor" because a review of her SBA email/computer system did not match her assertions of the number of hours she had worked. *Id.* (internal quotations and alteration omitted).

Two years later, on March 5, 2020, plaintiff and the SBA entered into a settlement agreement that released "all claims contained within any of the matters or forums [related to plaintiff's EEO complaints and union grievances]" and "any and all other claims, demands, rights or causes of action, however designated . . . whether known or unknown, pending or not now

pending, contingent or fixed, that Complainant has had, now has or hereafter may have against the [Small Business Administration] and its officials, employees, officers, agents, and representatives as of the date of this Agreement."  Ex. 5 to Compl. [Dkt. # 1-5] ("Settlement Agreement") ¶ 11.

Notwithstanding the Settlement Agreement, plaintiff kicked off the ongoing wave of litigation approximately a year later on February 1, 2021, by filing her first complaint seeking two additional hours of overtime pay for the first day of the government shutdown.  *Lucas I*, 2022 WL 2064852, at *2.

**The *Lucas I* Lawsuit**

The complaint in *Lucas I* consisted of two claims: (1) that plaintiff was owed unpaid wages due to an intentional violation of the FLSA; and (2) that plaintiff's termination was unlawful retaliation for activities protected by the FLSA.  *Lucas I*, 2022 WL 2064852, at *2.  On July 23, 2021, defendant moved to dismiss, or in the alternative, for summary judgment.  *Id.* at *1.  It argued that the FLSA complaint should be dismissed because plaintiff had released all of her claims against the agency in the Settlement Agreement, and that plaintiff failed to state a claim because she did not engage in protected activity.  *Id.*

On June 8, 2022, the Court granted the SBA's motion in part and denied it in part.  *See id.* at *8–9.  The Court denied the motion with respect to the effect of the Settlement Agreement on the FLSA claim, finding that "there [was] a material dispute of genuine fact at this early juncture as to whether plaintiff dismissed her FLSA claims as part of the [Settlement] Agreement."  *Id.* at *8.  The Court granted the motion with respect to the unlawful retaliation claim, though, because plaintiff failed to allege facts sufficient to give rise to a plausible inference that she engaged in protected activity.  *Id.* at *8–9.

4

On June 17, 2022, defendant answered the surviving claim.  *See* Answer, *Lucas I* [Dkt. # 33].  Several days later, on June 21, 2022, plaintiff filed a motion for reconsideration of the Court's decision granting in part and denying in part the dispositive motion.  *See* Mot. Recons., *Lucas I* [Dkt. # 34].  On August 5, 2022, the Court denied the motion to reconsider.  *See* Order, *Lucas I* [Dkt. # 39].

On June 2, 2023, plaintiff filed a motion for leave to file an amended complaint.  *See* Pl.'s Mot. for Leave to File Am. Compl., *Lucas I* [Dkt. #53].  The Court granted the motion.  Min. Order (June 26, 2023), *Lucas I*.  On February 7, 2024, plaintiff filed a motion for sanctions, which foreshadowed many of the allegations advanced against the SBA in this lawsuit.  *See* Pl.'s Mot. for Sanctions, *Lucas I* [Dkt. # 63].  On February 8, 2024, the Court issued an order staying the motion for sanctions:

> The Court has repeatedly advised plaintiff that the question to be resolved at this time is whether plaintiff may amend her complaint or whether the proposed amendment would be futile.  That question can be resolved without litigating the integrity of agency counsel.  That is why the Court ordered the parties to refrain from filing additional pleadings and previously denied leave to file many of the same exhibits that are appended to today's motion.  It is therefore ORDERED that further briefing and consideration of plaintiff's motion for sanctions is STAYED pending further order of the Court; any additional pleadings addressing these issues will be stricken from the record.  Plaintiff's motion for a hearing on the topic is accordingly DENIED without prejudice; a hearing on the topic will be scheduled if and when the Court deems it necessary to do so.  SO ORDERED.  Min. Order (Feb. 8, 2024), *Lucas I*.

On March 20, 2024, new counsel entered an appearance on plaintiff's behalf, *Lucas I* [Dkt. # 64], and withdrew the motion for sanctions.  Pl.'s Notice of Withdrawal, *Lucas I* [Dkt. # 65].  Five days later, on March 25, 2024, plaintiff filed the instant case.  Plaintiff alleges that the SBA retaliated against her for filing *Lucas I* by moving to dismiss the complaint and answering the claim that was left standing in a dishonest way.  Compl. ¶ 42.  She also takes issue with other events, claiming that the SBA's communications from 2020 through 2021 with the

Department of Labor's Office of Workman's Compensation Programs were intended to "intimidate and threaten her" to get her to drop the lawsuit and to cause "maximum injury," including "imprisonment," or such punishment as garnishment, fines, or denial of benefits.  Compl. ¶¶ 13, 20, 46–48, 56, 62.  She also characterizes the SBA's March 2020 failure to make certain payments she alleges she was due under the Settlement Agreement as retaliatory.  Compl. ¶¶ 34–38.  Plaintiff also makes generalized allegations that she experienced "ongoing retaliation" for filing the *Lucas I* lawsuit and that the SBA "ignored her request to stop retaliating."  Compl. ¶ 45.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint "liberally in the plaintiff's favor." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under its provisions. 29 U.S.C. § 215(a)(3). "[C]ourts have looked to Title VII cases in interpreting the FLSA." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008); *see Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 54 n.9 (D.D.C. 2015), quoting *Cooke v. Rosenker*, 601 F. Supp. 2d 64, 73 (D.D.C. 2009). To establish a prima facie case of retaliation under the FLSA, a plaintiff must

show:  (1) that she engaged in a protected activity, (2) that she was subjected to an adverse action by her employer, and (3) that there is a causal link between the protected activity and the adverse employment action.  *Hicks v. Ass'n of Am. Med. Colls.*, 503 F. Supp. 2d 48, 51 (D.D.C. 2007) (FLSA); *see also Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (Title VII).

To state a claim for retaliation, a plaintiff must first allege that she engaged in protected activity by filing a complaint or instituting or causing to be instituted any proceeding under the FLSA's provisions.  *See* 29 U.S.C. § 215(a)(3).  "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (discussing retaliation in violation of the FLSA).  The complaint must have "some degree of formality" that would provide an employer with "fair notice that a grievance has been lodged."  *Id.*[2]

### I.    Plaintiff Adequately Alleges That She Engaged in Protected Activity.

Here, plaintiff asserts that she engaged in protected activity by filing the *Lucas I* lawsuit. Compl. ¶ 91; *see* 29 U.S.C. § 215(a)(3).  Defendant does not dispute that element of the claim.

The only issues before the Court, then, are whether plaintiff has alleged sufficient facts that support a plausible inference that she was subjected to an adverse action by the SBA, and if so, whether there is a causal link between the protected activity and the adverse action.

---

13    For purposes of a Title VII retaliation claim, "no 'magic words' are required," but "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).  "Not every complaint garners its author protection under Title VII."  *Id.* (noting that plaintiff's memorandum may not be protected activity since it did not allege that "she was currently being discriminated against or that she was being retaliated against for her previous lawsuit").

**I.      Plaintiff Does Not Allege Sufficient Facts That Would Give Rise to a Reasonable Inference That She Was Subjected to an Adverse Action.**

To plead an adverse action, a plaintiff must plausibly allege that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 428 (D.D.C. 2015) (applying the "materially adverse" standard to FLSA retaliation claims). An action is materially adverse when it might "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. However, "not everything that makes an employee unhappy is an actionable adverse action." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013), quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). "To be materially adverse, the employer's action must be more than those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*, quoting *Burlington N.*, 548 U.S. at 68 (internal quotations omitted). The D.C. Circuit has noted that an actionable event is one that would "affect the employee's 'position, grade level, salary, or promotion opportunities.'" *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).

Plaintiff's complaint strings together an array of alleged adverse actions. The allegations can generally be grouped as follows: (1) the agency's defense to the *Lucas I* lawsuit; (2) the SBA's communications to various federal agencies related to the processing of plaintiff's worker's compensation claim and other benefits; and (3) the SBA's alleged breach of the 2020 Settlement Agreement by not making "continuation of pay" payments. *See* Compl ¶¶ 4, 37.

A. The SBA's Defense In *Lucas I* Had a Reasonable Basis In Fact and Law.

Plaintiff alleges that the SBA's defense of the case she brought against it was a form of retaliation for her filing the lawsuit. Compl. ¶ 43. She claims that in filing its motion to dismiss,

defendant "knew or with reasonable inquiry would have found out" that plaintiff had filed a formal grievance regarding her unpaid wages such that it was clear she had engaged in protected activity and the agency's answer was "frivolous."  Compl. ¶ 42, 77–81.

Defendant contends that its "good-faith non-frivolous" defense in *Lucas I* cannot be retaliation as a matter of law.  Def.'s Mot. at 15–20 (citing *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 748–49 (1983) (involving an alleged retaliatory counterclaim brought by an employer against an employee).  There, the Supreme Court recognized that a lawsuit filed by an employer against an employee can constitute an act of unlawful retaliation when the lawsuit "lacks a reasonable basis in fact or law."  461 U.S. at 742–43, 748.  ("Considering the First Amendment right of access to the courts . . . [t]he filing and prosecution of a well-founded lawsuit may not be enjoined . . . even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by [federal law.]").  The Court's holding drew upon the *Noerr-Pennington* doctrine under which "[r]etaliatory motive and lack of reasonable basis" are determined. *Id.* at 748; *see Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61 (1993) (observing that a lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits").

Neither party points to caselaw that applies these principles to a party's actions in defending a lawsuit brought against it.  But the factors considered by the Supreme Court are instructive.

Considering, then, whether defendant's motion to dismiss and answer in *Lucas I* lacked a reasonable basis in law or fact, the clear answer is no.  Plaintiff elected to initiate the lawsuit in *Lucas I*, and defendant responded, which was required under the Federal Rules of Civil Procedure. Mounting a defense and using the tools available under the Federal Rules can hardly constitute an

adverse action, and the motion to dismiss raised good-faith arguments, grounded in case law and plaintiff's own allegations in the *Lucas I* complaint. *See Lucas I*, 2022 WL 2064852, at *7–9 (describing defendant's arguments). Indeed, the motion to dismiss was partially meritorious, because there was a Settlement Agreement in place that barred some, if not all, of the *Lucas I* claims. And even in its decision to deny the motion to dismiss with respect to the surviving count, the Court explained that it was doing so because there was genuine dispute of material fact "at this early juncture" that precluded dismissal, not because the argument lacked a foundation. *See id.* at *8. The Court later reiterated its ruling in an order denying plaintiff's motion to reconsider. *See* Order Denying Mot. for Recons., *Lucas I* [Dkt. # 39]. In short, defendant's motion to dismiss was an objectively reasonable step to take.

Plaintiff also attacks the SBA's answer to what remained of the *Lucas I* complaint, claiming the agency's responses to certain allegations were made to "obstruct[] justice" and "mislead[] the Court." Compl. ¶ 68. Plaintiff specifically takes issue with the fact that defendant referred to a May 18, 2018 Notice of Proposed Removal rather than a May 8, 2018, Notice of Proposed Removal. Plaintiff contends that the May 8 Notice was more relevant to her "complaints of unpaid wages and overtime," and its omission revealed the agency's awareness that she allegedly engaged in protected activity. *See* Compl. ¶¶ 68–69. But even assuming defendant drew the Court's attention to the wrong document in a legal proceeding, the event does not rise to the level of an adverse action that would "dissuade a reasonable employee from further protected activity." *Del Villar v. Flynn Architectural Finishes, Inc.*, 893 F. Supp. 2d 201, 213 (D.D.C. 2012). And since the answer to the *Lucas I* complaint was filed well after plaintiff had left the SBA, it had no impact on the terms and conditions of her employment. *See Taylor v. Solis*, 571 F.3d at 1321 ("[Plaintiff]'s bare, conclusory allegation that she was denied promotional and bonus opportunities

11

as a result of [the employer]'s unlawful conduct in violating Title VII's prohibition against retaliation does not discharge her burden to show the evaluations were attached to financial harms.") (internal quotations omitted).

Plaintiff also contends that the SBA's answer was retaliatory because defendant did not concede that plaintiff was entitled to be paid for the two hours of overtime work in answering her allegations. *See* Compl. ¶ 42. Here again, Federal Rule of Civil Procedure 8(b)(1)(B) required defendant to specifically "admit or deny" the allegations asserted against it by an opposing party. While plaintiff may be disappointed that defendant did not concede this point, she is not entitled to superintend the substance of the SBA's responses to her allegations. Defendant's position that plaintiff was not entitled to more than four hours of overtime pay was objectively reasonable, and it has been consistent over time. *See Lucas v. Dhali*, 2025 WL 3771999, at *2; *see also* Ex. 19 at 2 (SBA Response to Grievance # 1-31-18 – Addendum 1 2-14-18).

B. Plaintiff's Allegations Regarding Her Worker's Compensation Claim Do Not Establish an Adverse Action.

Plaintiff's other allegations also fail to give rise to a plausible inference she was subjected to adverse actions in the wake of filing the *Lucas I* complaint. She contends that defendant had sinister motivations for sending letters to other federal agencies regarding her worker's compensation claim, and she accuses defendant of attempting to have her charged with "perjury" or imprisoned. Compl. ¶¶ 20, 22–23, 56, 83–85 (alleging "constant fear of further reprisal"). But these characterizations cannot be squared with the letters themselves, which are incorporated in the complaint and appear to be routine communications exchanged between federal agencies in order to process her worker's compensation claim and other benefits:

- Ex. 3 to Compl. [Dkt. # 1-3] (SBA June 15, 2021 Response to Letter from Department of Labor ("DOL") Office of Worker's Compensation Programs,

confirming plaintiff's grade, step, and salary on the date of her injury, and the fact that plaintiff had "a compensable service-connected disability");

- Ex. 7 to Compl. [Dkt. # 1-7] (May 17, 2022 Letter from DOL to the SBA seeking clarification about an issue brought to its attention by plaintiff: that plaintiff was entitled to receive both veterans' and workers' compensation benefits as they arose from distinct disabilities);

- Ex. 8 to Compl. [Dkt. # 1-8] (Dec. 23, 2022 call from the SBA to DOL seeking a status update concerning plaintiff's benefits);

- Ex. 9 to Compl. [Dkt. # 1-9] (Dec. 21, 2023 SBA Letter to Department of Veterans Affairs seeking an update on recent examinations and plaintiff's work status);

- Ex. 10 to Compl. [Dkt. # 1-10] (Feb. 7, 2024 SBA Letter seeking update on results of the second opinion DOL documented its intent to seek);

- Ex. 15 to Compl. [Dkt. # 1-15] (Sep. 19, 2022 Letter from DOL to the SBA confirming plaintiff's eligibility for "continuance of pay" for the first 45 days following her injury: March 5, 2019 – April 19, 2019).

There is no reference to perjury or imprisonment in the letters, nor do they provide any basis that would support plaintiff's accusations. Most of the letters serve to support plaintiff's efforts to receive benefits. Not one remotely qualifies as an adverse action, and the fear plaintiff claims they engendered cannot change that outcome. *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022); *see also Jones v. Castro*, 200 F. Supp. 3d 183, 189 n.5 (D.D.C. 2016) ("[B]ecause the standard for materially adverse actions is an objective one, [p]laintiff's description of his own subjective reactions cannot transform the purported conspiracy into a materially adverse action.").

C. The Purported Breach of the Settlement Agreement Preceded the Protected Activity And Does Not Allege the Requisite Causation.

Plaintiff alleges that defendant retaliated against her beginning in March 2020 when it breached the Settlement Agreement by not making "continuation of pay" payments. Compl. ¶¶ 34–38; *see also* Pl.'s Mot. at 15. Plaintiff alleges she was entitled to the payments for 45 days

13

after her work injury in March 2019, Compl. ¶ 37,[3] and that defendant failed to make those payments in retaliation for the *Lucas I* lawsuit. *See* Compl. ¶ 40.

Defendant disputes plaintiff's entitlement to "continuation of pay" payments under the terms of the Settlement Agreement, but it contends that even if plaintiff was entitled to the payments, she has failed to allege the necessary causal link between the protected activity and the adverse action. Def.'s Mot. at 25–27; Def.'s Reply at 15–16. Plaintiff's entitlement to the payments dates back to March 4, 2019, and the 45 days that followed. The Settlement Agreement, to the extent that it is relevant, was executed on March 9, 2020. Ex. 5 to Compl. at 10–11. But both of those events and failures to make the payments when they were due preceded the filing of *Lucas I*. So the chronology rules out any inference that they were caused by, or in retaliation for, plaintiff's later protected activity of suing the agency in February 2021. *See Hill v. Kempthorne*, 577 F. Supp. 2d 58, 66 (D.D.C. 2008) (finding that an alleged adverse action that occurred two months prior to protected activity "cannot in any sense constitute reprisal for the protected activity"); *Jones*, 168 F. Supp. 3d at 180 ("The [alleged adverse action] cannot be retaliation for the protected activity because it occurred *prior* to that activity.").[4]

---

3    The timeline of plaintiff's allegations regarding the purported breach of the Settlement Agreement are difficult to piece together. Plaintiff asserts that she was entitled to "continuation of pay" payments for 45 days after her workplace injury occurred on March 4, 2019. The parties did not enter into the Settlement Agreement until more than one year later in March 2020. It is unclear whether plaintiff's theory is that she was entitled to receive the payments by virtue of the fact that she experienced a workplace injury or because defendant agreed to make the overdue payments in arrears when the parties entered into the Settlement Agreement.

4    Because the Court finds that plaintiff fails to state a claim upon which relief can be granted, the Court need not address and expresses no view as to whether plaintiff's claims in this lawsuit are also barred under the doctrine of claim splitting. *See* Def.'s Mem. at 28–30; Pl.'s Sur-Reply at 4–6.

**CONCLUSION**

Because the Court finds that plaintiff's allegations are insufficient to state a retaliation claim, defendant's motion to dismiss is **GRANTED**.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:   March 23, 2026